NOT DESIGNATED FOR PUBLICATION

No. 118,394

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

AARON KALMER,
*Appellee,*

and

AMANDA DANIELS,
*Appellant.*

MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Opinion filed September 14, 2018. Affirmed.

*James W. Fuller*, of The Law Office of Heath A. Stuart, Chartered, of Leawood, for appellant.

*Jean Ann Uvodich*, of Olathe, for appellee.

Before STANDRIDGE, P.J., BRUNS and GARDNER, JJ.

PER CURIAM: Amanda Daniels appeals from two postjudgment orders entered by the district court on August 11, 2017. Aaron Kalmer originally brought this case as a divorce action. Although Kalmer had claimed that he and Daniels were parties to a common-law marriage, they ultimately reached a settlement in which they agreed that they were not legally married. However, the parties asked the district court to exercise its equitable powers to approve a settlement dividing certain property and debt between the parties. The district court approved the settlement and neither party filed an appeal.

1

Several months later, Kalmer sought a citation in contempt against Daniels for allegedly failing to return certain items of property to him. In addition, he filed an emergency motion to allow him to take possession of certain items of property that Daniels had allegedly placed for sale on Craigslist. The district court granted both motions. Subsequently, Daniels filed a motion to reconsider and Kalmer filed a motion for order to show cause. On August 11, 2017, the district court filed written decisions ruling in favor of Kalmer on both motions. In response, Daniels filed a timely notice of appeal from both of these rulings. For the reasons set forth in this opinion, we affirm the district court.

FACTS

On September 2, 2014, Kalmer filed a petition for divorce against Daniels. In the petition, Kalmer alleged a common-law marriage. In Daniels' answer, she denied the existence of a marital relationship. Eventually, Kalmer and Daniels agreed that they were not married. Nevertheless, they requested that the district court exercise its equitable powers to approve their settlement regarding the division or allocation of certain property and debt.

In a Journal Entry and Judgment filed with the Clerk of the District Court on August 9, 2016, the district court approved the agreement of the parties. In the journal entry, the district court found that "there shall be no entry of divorce" because the parties "were not legally married." The journal entry also provided—among other things—that Daniels would return certain property items that he left at her residence, including a computer numerical control (CNC) machine and accompanying tools and computers. In addition, Kalmer was to return to Daniels a laptop, stereo receiver, and a gas powered remote control truck that belonged to her father. The journal entry also required that "[a]ll items be returned in the same condition as they were at the time of the parties'

2

separation." Neither party appealed from the Journal Entry and Judgment approving the parties' settlement.

On November 8, 2016, Kalmer filed a motion for order to show cause and an affidavit for citation to show cause, in which he alleged that certain items of personal property were not returned to him or were returned in a damaged state. Accordingly, Kalmer requested that the district court hold Daniels in indirect civil contempt and award him damages in the amount of $30,000 plus $1,000 in attorney fees.

The district court held an evidentiary hearing on January 10, 2017. At the hearing, Kalmer offered testimony in support of the allegations set forth in his motion. In addition, Kalmer testified about the amount of damages he claimed to have suffered as a result of Daniels' failure to comply with the previous order of the court. Several other witnesses also testified and generally corroborated his claims. Moreover, Daniels testified and denied Kalmer's claims that she had failed to return or damaged his personal property. We note that the Kalmer introduced 34 exhibits, including numerous photographs, into evidence.

On January 19, 2017, Kalmer filed an emergency motion for an order allowing him to take immediate possession of property. In this motion, Kalmer alleged that Daniels had posted an advertisement on Craigslist offering to sell several items of personal property that belonged to him for $15,000. Kalmer further attached a copy of the Craigslist advertisement to his motion. On the same day, the district court held a hearing to hear arguments on Kalmer's initial motion and his emergency motion. Although the advertisement included two photographs of the items offered for sale, it indicated that additional photographs were available on request because the person placing the ad did "not want my X husband to see all of them."

3

The district court entered a journal entry regarding both the motion for citation and the emergency motion on January 24, 2017. Regarding the first motion, the district court found that "[t]he great weight of the evidence shows that the equipment [to have been returned to Kalmer] was operational when it was left [at Daniels' residence] and was not returned in an operational condition." As such, the district court concluded that Daniels had "contemptuously violated the [previous] order" by not returning some items of personal property and damaging others.

After finding Daniels to be in indirect contempt, the district court addressed sanctions in the journal entry. Specifically, the district court found that she could "purge the present contempt by returning the property in an undamaged state within 15 days" or if she failed to do so, pay "$500 per month starting on February 19, 2017, and continuing each month . . . until the balance of $11,280 is paid in full." Regarding the emergency motion, the district court found that "[t]he property that is identified in the Journal Entry and on the Craigslist listing is to be collected and placed in [secure] storage" with the cost of the storage to be shared by the parties.

On February 7, 2017, Kalmer filed a motion for order to show cause, indicating that when his attorney went to retrieve the property to be placed in storage pursuant to the district court's previous order, it was missing. Furthermore, Kalmer asserted that although Daniels had returned one of his computers, she returned it in an inoperable state. About two weeks later, on February 20, 2017, Daniels filed a motion asking the district court to reconsider the journal entry entered on January 24, 2017. Specifically, she asserted that the sanction ordered by the district court was not warranted because the CNC machine was not worth as much as Kalmer claimed. She also asserted in response to the order to show cause that the district court should not have held her in contempt and that Kalmer took property that did not belong to him.

4

The district court held an evidentiary hearing on the outstanding motions on July 27, 2017. At this hearing, Kalmer testified regarding the personal property in the photographs that were part of the Craigslist advertisement. Two witnesses testified that they had heard Daniels state that she had posted the Craigslist advertisement and Kalmer's mother testified that she had been giving the name of "Amanda Daniels" as the seller of the property.

Daniels also testified at the hearing about the property and denied posting the advertisement on Craigslist. The district court sustained an objection by Kalmer's counsel and reminded Daniels' counsel that a motion to reconsider "is not an opportunity to put on the case again." The district court further ruled that she would not allow additional testimony regarding the value of the CNC machine because the prior hearing had addressed it in detail and that evidence regarding how much Daniels allegedly paid for the machine would have been available to her at that time.

On August 11, 2017, the district court entered the two decisions that are the subject of this appeal. In the decision on Kalmer's motion for order to show cause relating to the items of personal property listed on the Craigslist advertisement, the district court held that Daniels had failed to comply with the previous orders of the court. In particular, the district court determined that as a result of Daniels' actions, "the property listed on Craigslist could not be placed in storage in that it was not at [her] home." The district court also determined that "[t]he weight of the evidence shows that [Daniels] advertised the property in question and likely sold it on Craigslist or disposed of it in some other manner."

Accordingly, the district court found Daniels to be in indirect contempt of court and ordered her to purge her contempt by either returning the property to Kalmer in 14 days or pay $15,000—the amount for which the property was offered on Craigslist—at a rate of $500 a month beginning on September 1, 2017. The district court also found

Daniels to be in contempt for damaging a computer that went with the CNC machine and ordered her to pay sanctions in the amount of $500. Finally, the district court ordered her to pay $1,200 in attorney fees.

In the decision denying Daniels' motion to reconsider, the district court pointed out that a motion to reconsider is not a second opportunity to relitigate an issue that the court has already ruled on. Regarding the amount of the sanction previously imposed for damaging the CNC machine and CDs required to operate the machine, the district court found that Daniels "is not presenting any information that could not have been discovered with reasonable diligence and presented at the January 19, 2017 hearing." In particular, the district court pointed out that if Daniels had "personally purchased the CNC machine and CDs four years ago [as she is now claiming], she could have easily testified to that at the prior hearing."

Finally, the district court addressed Daniels' request that Kalmer return certain property she claims belongs to one of her friends. The district court noted that at most Daniels had testified that someone took the property from her home. Daniels did not, however, present the friend as a witness to "testify regarding his ownership of any property taken by [Kalmer]." The district court also pointed out that Kalmer offered testimony that either he or his father owned the property in question. After weighing the testimony presented, the district court found the testimony of Kalmer and his witnesses "to be more likely true than not and therefore will not order any items be returned to [Daniels]."

ANALYSIS

On appeal, Daniels first contends that the district court had insufficient evidence to approve the settlement agreement between the parties. She argues that as a result any subsequent rulings by the court were erroneous. We disagree.

6

Whether our court has jurisdiction is a question of law subject to unlimited review. *Kaelter v. Sokol*, 301 Kan. 247, 247, 340 P.3d 1210 (2015). Subject matter jurisdiction may be raised at any time. Hence, the issue can be raised for the first time on appeal or even on the court's own motion. See *Jahnke v. Blue Cross & Blue Shield of Kansas*, 51 Kan. App. 2d 678, 686, 353 P.3d 455 (2015), *rev. denied* 303 Kan. 1078 (2016). Moreover, in a typical case, a party must file the appeal within 30 days from "entry of the judgment." K.S.A. 2017 Supp. 60-2103(a). Judgment is entered when a journal entry or judgment form is filed. K.S.A. 2017 Supp. 60-258.

Here, the district court filed its Journal Entry and Judgment finding that the parties were not legally married and exercising its equitable authority to divide the parties' property with the Clerk of the District Court on August 9, 2016. At that point, the judgment became final and the parties had 30 days in which to file a notice of appeal. However, neither party filed an appeal during that period. In fact, Daniels did not file a notice of appeal until September 11, 2017. Furthermore, her notice of appeal states that she is appealing from two postjudgment decisions entered by the district court on August 11, 2017. Thus, we are without jurisdiction to consider whether there was substantial competent evidence to support the findings made by the district court in its August 2016 Journal Entry and Judgment.

Next, Daniels contends that the district court erred in imposing sanctions against her in its order filed on January 24, 2017. Daniels is not challenging the district court's ruling that she was in indirect contempt of court. Rather, she is only challenging the amount of sanctions imposed.

A district court has broad discretion in choosing an appropriate sanction for indirect contempt. K.S.A. 2017 Supp. 20-1204a(b) provides that "[i]f the court determines that a person is guilty of contempt such person *shall be punished as the court shall direct*." (Emphasis added.) On appeal, we must determine whether the district court

7

has abused the broad discretion given to it by the Legislature. See *In re Marriage of Shelhamer*, 50 Kan. App. 2d 152, 154, 323 P.3d 184 (2014). A judicial action only constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) is based on an error of law; or (3) is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

"Courts exercise contempt powers in order to maintain decorum in all court proceedings, punish those who show disrespect for the court or its orders, and enforce its judgments." *In re J.T.R.*, 47 Kan. App. 2d 91, 94, 271 P.3d 1262 (2012). It is important to keep in mind that in this appeal we are dealing with contempt sanctions and not property valuation. Although the value of the property that Daniels did not return or returned in a damaged condition is relevant, it is not determinative. There is no precise formula required in calculating the amount of monetary sanctions that a district court may impose for contemptuous conduct. Rather, the district court may design reasonable contempt sanctions in an attempt to compel compliance with an order of the court. See *In re McDaniel*, 54 Kan. App. 2d 197, 211-12, 399 P.3d 222 (2017) (civil contempt is meant to be remedial and the district court may impose fines or other sanctions until the contemptuous party complies); accord K.S.A. 20-1204a(b).

In this case, Kalmer had requested $30,000 in sanctions plus $1,000 in attorney fees for Daniels' initial indirect contempt of court. Instead, in its order entered on January 24, 2017, the district court gave Daniels the opportunity to "purge the present contempt by returning the property in an undamaged state within 15 days" or if she failed to do so, pay "$500 per month . . . until the balance of $11,280 is paid in full." We do not find this sanction to be unreasonable since it gave Daniels the opportunity to purge herself of the contempt by simply returning the property. Moreover, we do not find the $11,280 that she would be required to pay if she failed to return the property to be unreasonable in light of the district court's findings that Daniels not only damaged the CNC machine but

8

also failed to return other property and returned other property in a damaged state. Thus, we find no abuse of discretion.

Daniels also contends that the district court erred in the sanctions it imposed after it found her to have offered property she was to return to Kalmer for sale on Craigslist. In its order of August 11, 2017, the district court once again gave Daniels the opportunity to purge her contempt by returning the property to Kalmer in 14 days. Only if she failed to do so would she be required to pay sanctions in the amount of $15,000 at a rate of $500 a month until paid in full. The district court found it was more likely than not that Daniels listed property on Craigslist that it had ordered her to return to Kalmer. In addition, the district court found that Daniels priced the property at $15,000 when she listed it on Craigslist. This conclusion is supported not only by witness testimony but also by a copy of the advertisement itself that was admitted into evidence and is part of the record on appeal. Accordingly, we do not find that the district court abused its discretion in the sanction it imposed.

The final issue raised by Daniels on appeal is that the district court erred in denying her motion to reconsider. This appears primarily to be a rehashing of Daniels' second issue. Nevertheless, we note that motions to reconsider are treated as motions to alter or amend under K.S.A. 2017 Supp. 60-259(f). *Exploration Place, Inc. v. Midwest Drywall Co.*, 277 Kan. 898, 900, 89 P.3d 536 (2004). We review challenges from the denial of a motion to reconsider for an abuse of discretion. *AkesoGenX Corp. v. Zavala*, 55 Kan. App. 2d 22, 30-31, 407 P.3d 246 (2017), *rev. denied* 308 Kan. ___ (June 25, 2018).

The purpose of a motion to alter or amend is to allow a district court to correct previous errors. *In re Marriage of Willenberg*, 271 Kan. 906, 910, 26 P.3d 684 (2001). It is not an opportunity to present additional evidence that could have been previously submitted. See *Antrim, Piper, Wenger, Inc.*, 37 Kan. App. 2d 932, 939, 159 P.3d 215

9

(2007). Hence, it is proper for a district court to deny a motion to alter or amend if the movant could have—with reasonable diligence—presented the argument or evidence before the entry of the final order. See *Wenrich v. Employers Mut. Ins. Co.*, 35 Kan. App. 2d 582, 590, 132 P.3d 970 (2006).

Here, Daniels did not proffer or otherwise show to the district court's satisfaction that there was previously unavailable evidence to present on the issue of valuation of the CNC machine. Moreover, as the district court found in its decision denying Daniels' motion to reconsider, the alleged additional information could have been discovered with reasonable diligence and presented at the hearing held on January 19, 2017. In particular, the district court pointed out that if Daniels had "personally purchased the CNC machine and CDs four years ago, she could have easily testified to that at the prior hearing." Thus, we find no abuse of discretion by the district court in denying the motion to reconsider.

Affirmed.